UNITED STATES DISTRICT COURT
at Boston

From a judgement in
Suffolk County
7584CR90504-510

Habeas Corpus Nos.
1:17-cv-12501-LTS

John Blodgett Pro se

v

Erin Gaffney,
respondent,
superintendent

PRO SE PETITIONER'S   MEMORANDUM OF LAW IN SUPPORT OF HIS
PETITION FOR HABEAS CORPUS

Introduction:

Your Pro se petitioner John Blodgett has served 40 years for the murder of John Asinari under joint venturer criminal liability. He was also convicted of kidnap, robbery, and attempted murder of the surviving victim, Robert Moses.  His sole theory of defense at trial was that of 'honest but mistaken' identification by Robert Moses.  Blodgett has already had a direct appeal, and five previous motions for post conviction relief.  Blodgett claims viable exception to the AEDPA one year statute of limitations because of the actual innocence exception on a clear <u>Brady</u> violation, and on his second more nebulous issue, he claims that the one year statute of limitations begin when: "The date on which the factual predicate could have been discovered through the exercise of due diligence." (Title 28 section 2244(d)(1)(D)). Blodgett's criminal conviction became final in 1979, a full 20 years before the AEDPA became the law of the land.  Therefore

under the strictures of that statute Blodgett would have had until April 24, 1997 to timely file for federal habeas corpus. But that without any application of equitable tolling.    Blodgett fully briefs herein his two constitutional issues and reserved as his third issue his argument on equitable tolling.

Blodgett maintains the government has the wrong man in prison for murder and other crimes.

The Prosecution's case:

On March 22, 1975 John Asinari and Robert Moses, both students at MIT in Cambridge, Massachusetts were walking over the Massachusetts Ave. bridge towards their dormitories in Cambridge. As they walked they were hitchhiking.   They were picked up by four men in a stolen two-door automobile with two criminals in front seats, and two more in the back seat.   Moses and Asinari squeezed into the back seat.    Robert Moses, the surviving victim, identified your petitioner Blodgett as the driver of the car, and Robert Shaughnessy as the assailant in the front passenger seat.   The two assailants in the back seat have never been identified nor apprehended.

The four assilants confined Moses and Asinari in the backseat while Blodgett stabbed Moses, and Shaughnessy stabbed and shot Asinari all while driving around.   This all the while the four laughed at their suffering and ignored or mocked their begging for their lives.

At some point the four criminals exited the vehicle, and thats

the point at which Moses and Asinari fled from the vehicle. They were pursued by the four.   Robert Moses successfully hid under some boxes in a vacant lot, while the assaillants caught up with John Asinari and he was beaten with a club-like object - at that point he fell, and died on the street.   The four assaillants gave up Moses for dead, and fled the scene and shortly afterwards burnt the stolen car.   Robert Moses called out for help to anyone as he lapsed into unconsciousness.   Some of the neighborhood came out of their houses and administered first aid until the ambulance came.

Heres where the case turned against Blodgett.   The police were searching the burnt out car, and Blodgett's apartment key was on the key ring along with the car's ignition key dangling from the burnt out car's steering column.   Up until that point, surviving victim Robert Moses had already picked out three photos of a different man from the mug shot book as the driver.   But once the keys on the key ring were linked to Blodgett, the surviving witness had an epihpany and switched his identification to Blodgett- even getting major features completely wrong, Blodgett's hair, Blodgett's lack of front tooth.   As you read the trial record it becomes obvious that Moses was in fact steered to Blodgett's pictures and coached that his aprtment key was on that key ring on the steering column of the burnt stolen car.

Testimony was heard that Blodgett had stolen the car weeks

beforehand and had been driving it back and forth to work under an illegal plate.   The owner had parked it in a hospital parking lot, and had left the keys in the ignition, Com v Blodgett 377 Mass 494, 496 (1979).

Blodgett's version of the night's events:

Blodgett and his circle of acquaintances around South Boston used to steal cars and keep them for weeks as a sort of sport. And they would occasionally steal each others already stolen cars if the need arose.   Blodgett testified he had stolen the car and had driven it for some time before this incident arose. Blodgett had been drinking at Barney Grogan's (a bar under new management today), and there that night had encountered Robert Shaughnessy.   Blodgett surmises that Shaughnessy stole his car keys to the stolen car off the bar while Blodgett wasn't paying attention, and was inebriated.   Blodgett did not realize the keys were gone until he was asked to leave the premises because of an argument he had with another customer.   He had to take a taxi back to his apartment and crawl in through a window because his apartment key was on that key ring.

Patrick Gates initially agreed to testify that he was that cab driver that night, but the District Attorney spoke with him minutes before his planned testimony and Patrick Gates fled the courthouse, and to this day refuses to get involved.

Blodgett received a phone call early the next day informing him that his hot car had been involved in a huge crime.   After traversing the city looking for information, he fled the state.

He was arrested two years later in Texas under a false name, and brought back to Massachusetts.

Robert Shaughnessy was arrested immediately after the killing and suicided in jail a year before Blodgett was arrested, (appendix pgs 39,41 ).    Blodgett was tried as Shaughnessy's joint venturer in the murder of John Asinari as well as kidnap, robbery, and the attempted murder of Robert Moses.   Blodgett has had a direct appeal, and five previous attempts at post conviction relief from conviction.   Although Blodgett's previous pro se pleadings were numerous, Blodgett authored none of them.   He in fact never grasped  legal concepts.   All his pro se pleadings were authored by other prisoners.   Which brings up Blodgett's predicament on equitable tolling.

Blodgett has no record of having previously filed a petition in this court for habeas corpus, but he has recollection of having another prisoner prepare said petition, and remembers mailing it. He believes that the previous petition contains his issue one stressed in the instant petition— a <u>Brady</u> issue.   This writer reviewed the transcripts, and the one herein presented is the only <u>Brady</u> issue in there.   Blodgett's recollection is that the previous petition, if it existed was dismissed without prejudice for containing unexhausted issues.

Blodgett had written this court's clerk twice (appendix 34,5) requesting copies or acknowledgement of the ghost petition with no answer from the court.   If it is extant Blodgett has to

file a motion for successive petition with the First Circuit
Court of Appeals.   But if it is extant, then Blodgett should be
permitted to proceed because the unconfirmed previous petition
was never adjudicated on the merits- it was dismissed without
prejudice.

In pursuing the instant petition, Blodgett had a minor snag
in his pro se attempt to exahust the two issues before the
Massachusetts Supreme Judicial Court.   The rules of appellate
procedure require the clerk of the trial court inform the parties
once the record on appeal has been assembled, but the trial court
never informed Blodgett, even though he had been in regular contact
with the trial court, having a motion to proceed in forma pauperis
on appeal allowed under rule 12(a), and a motion for appointment
of student attorney to assist with preparation of pleadings denied.
These pleadings are at appendix 24, 27, 28. Since the starting point
of 30 days to file application for leave to obtain further appellate
review a gatekeeper petition under c 278 section 33E is when the
clerk sends the notification of assembly of the record, and in
this case Blodgett only discovered it by asking the clerk why it
was taking so long- receiving a memo (appendix pg 28 ) indicating
it had already taken place with a "sorry' attached as comment,
Blodgett should not be taxed with the error.   And in fact, the
SJC still disposed of the application by stating the reasons
in cursory fashion why each issue was not "new" or "substantial".
To be sure, Blodgett has not had meaningful redress of his issues.

History of the Pleadings:

Blodgett's convictions were affirmed on direct appeal, 377 Mass 494 (1979). The gravamen of that failure was that the trial court erred by preventing Blodgett from using his alibi witness (the taxi driver Patrick Gates). But the trial court later in the trial relented and did permit the alibi witness, who by that time had been spooked by the conversation with the district attorney, and he fled the courthouse, so it was not the court's error, if anything it was the un-pleaded issue of intimidation by the D.A.. But the true miscarriage of justice occurred with direct appellate counsel because instead of using the dead bang winner issue under Brady v Maryland where it was revealed midway through trial that Detective Childers had lied under oath about surviving witness Robert Moses having first picked out three photos of someone else as the driver of the car, and the witness Moses himself lied about it until he was confronted with his previous testimony at a hearing for now dead Robert Shaughnessy --the judge halted proceedings and ordered the Detective to immediately produce the three photos they had lied about. After a recess the detective claimed he could not find them- they were lost. This isn't done by homicide detectives especially when the two assailants in the back seat were never identified nor captured. Yet direct appeal counsel ignored the Brady issue which had been preserved by contemporaneous objection and an exception. A genuine miscarriage of justice

That was the direct appeal.

As stated, Blodgett has never grasped legal concepts. Through various jailhouse lawyers as they presented themselves to him, he filed the following (including this pleading):

Motion for new trial denied Aug. 6, 1982;

Issues:

*   Improper identification (show up identification where Blodgett was brought in chains to county lockup.

*   Ineffective assistance of counsel- failure to object to show up ID.

*   motion for appointment of counsel also denied.

Motion for new trial denied July 3, 1986:

Issues:

*   Error to court for refusing to permit counsel to elicit Blodgett's criminal record to jury.

*   Improper imposition of consecutive sentences for kidnap.

*   Evidence that the D.A. intimidated alibi witness.

Motion for new trial denied March 1990:

Issues:

*   No charge on mental impairment- intoxication

*   improper charge on felony murder

*   Burden shifting malice instruct.

*   Defective instruct on flight from prosecution

*   Defective instruct on honest but mistaken identification

*   overly suggestive photo array ID procedure

*   Improper remarks by D.A. in summation

*   ineffective assistance of counsel

Blodgett filed two separate actions for immediate release from unlawful custody denied in July 1982,

Issues:

*   insertion of evidence from outside the record

*   intentional misrepresentation of evidence in summation

*   improper vouching for prosecution witness

*   derogatory remarks about Blodgett to jury

*   improperly postulating about Blodgett's failure to turn himself in to police to say he was innocent.

And again, in 1998 a state habeas corpus petition denied without prejudice (because it was the worng legal instrument):

Issues:

*   trial counsel failed to suppress suggestive photo array

*   D.A. and Boston detectives in explicably destroyed the three mugshots other than Blodgett that the victim picked out as the driver of the stolen car before he identified Blodgett.

*   prejudicial remarks by D.A. in opening and summation

*   witness intimidation by D.A.

*   improper show up identification done by D.A.

*   improper itnroduction to jury of prior assault and battery

*   ineffective assistance about improper show up ID

*   ineffective assistance- failure to argue for mistrial

*   failure of counsel to object when the court instructed the court reporter to stop recording

*   ineffective assistance of appellate counsel for failing to raise these maritorious issues

10.

Due to Blodgett's limited resources as prisoner dependent also on limited jailhouse lawyers, Blodgett pleads this Court to, if not already familiar, acquaint themselves with an informative book by James Doyle:

True Witness
copyright 2005
Palgrave MacMillan
175 Fifth Ave.
New York, NY 10010
ISBN 1-4039-6430-0

The topic of the book is entirely the proven phenomenon of 'honest but mistaken' identification by eyewitnesses.

In it numerous documented cases even by a woman who was brutally raped who, even when confronted by the man whom DNA proved was the actual rapist, insisted it was the falsely accused man, State v Cotton 99 N.C. 615, 617; 394 S.E. 2d 456, 458 (1990). The proven phenomenon of overzealous detectives tainting a witness' perceptional acumen until he/she becomes convinced more and more over time upon an honest but mistaken indentification, Doyle, pg 92, pg 99, pg 102.

Robert Moses incorrectly identified Blodgett's hair, Tr. Vol 4 pg 67; he incorrectly stated Blodgett had no missing tooth in front, Tr Vol 4 pg 118, and then there was the proven collusion of Detective Childers and Robert Moses to conceal the fact that Moses had first selected three photos of someone else as the driver- undoubtedly before the detectives matched Blodgett's apartment key on the that stolen car key ring Tr Vol 4 pgs 92 thru 100.   This proceeds with the judge ordering the detective to go get the three original photos- halting the proceedings.

Because of the gravity of this deception, the trial counsel objected, made exception, and moved for mistrial, Vol 4 pgs 100-130.

Oddly direct appellate counsel ignored this dead bang winner appellate issue and opted instead for an impotent issue. This glaring unaddressed issue of actual innocence hoists Blodgett over the Massachusetts Doctrine of waiver, and the AEDPA's one year statute of limitations.   Coupled with Blodgett's second issue of Confrontation rights and right to counsel being abridged by the improper prosecution of Blodgett as Robert Shaughnessy's joint venturer in the murder of John Asinari, the time is ripe after 40 years to finally correct this lingering injustice. Both Massachusetts and Federal Practice support abatement of an indictment when the defendant dies before his direct appeal is heard.   Shaughnessy dies before he even had a trial.   Why should Blodgett' be convicted as joint venturer using dead Shaughnessy's words and actions through the testimony of Robert Moses when Blodgett's counsel was told he didn't have standing to object on Shaughnessy's behalf?  (Tr Vol 5 pgs 5 thru 12).

The only fair way to have a trial for dead Shaughnessy on his already abated indictment would be to appoint him counsel. Ridiculous.   Likewise absurd to use an abated indictment to prove the case against Blodgett as joint venturer.   Since no court has ever addressed this predicament, Blodgett claims he could not have brought this issue sooner because no attorney is required to be clairvoyant- equitable tolling applies.

Blodgett sought out opinions while composing the idea of an infirm joint venturer theory from reputable attorney's, (append **6-15**) and once he thought he might have something he filed immediately in Suffolk Superior Trial Court.

Before Blodgett briefs the two constitutional issues, and issue three seeking equitable tolling he wishes to plead to this Court for leave to file a voluminous excerpts segment of transcript which simplifies the Court's task in evaluating the:

* small scale conspiracy between at the very least Detective Childers and Robert Moses in advancing the later discovered falsehood that Robert Moses had not picked out any other photos of the driver other than Blodgett.  Thus the excerpts of Detective Childers' testimony, Robert Moses' testimony, and the colloquy at side bar are necessary in the interests of justice as a near future supplemental appendix.

* the repetive introduction of dead Shaughnesse's inculpatory statements and actions to convict Blodgett as joint venturer and the Court's refusing Blodgett's attorney standing to object on Shaughnessy's behalf.  These transcript pages are voluminous but necessary in the interests of justice.

ISSUE ONE:

A small scale conspiracy between at the very least Detective Childers and Robert Moses to conceal from the jury the fact that Robert Moses had, previous to being alerted about Blodgett's keys in the burnt car's ignition, had selected three photos of someone else as the driver of the car, AND in fact members of that conspiracy "lost" the three photos irretrievably according to them- Brady v Maryland.

Detective Childers was an uncooperative and deceptive witness, so much so as to work a miscarriage of justice on Blodgett. Before those keys were found linked to Blodgett, Robert Moses had already selected three photos from the mugshot book of someone other than Blodgett as the driver. But Detective Childers lied about this and claimed no other person was ever selected, Tr Vol 1 pgs 24 to 27, (but this Court should read all Det. Childers' testimony once the supplement is filed to get a Gestault on the depth of the deception) (Supp. Appndx "A").

Blodgett was from the neighborhood and was on parole at the time. Yet Detective Childers stated that Blodgett was not in the first mugshot book he showed Robert Moses, but he added, "It was the only mugshot book we had at that time". Not plausible. Childers downwardly exaggerated the number of mugshots he showed to Robert Moses stating it was around 60 to 70 mugshots while on a different day star witness Robert Moses stated it was over 200 mugshots Tr Vol 4 pg 92.

Robert Moses himself was an obviously conscripted partner in the deception because he also advanced similar lies on the witness stand. He claimed that he had not previously selected anyone elses photo from the mugshot book as the driver. Yet on cross examination by Blodgett's counsel when confronted by his previous testimony at a hearing two years previous while Shaughnessy was alive and Blodgett was out in Texas, Robert Moses reluctantly admitted that he indeed had selected three photos of another man, but then tried to clumsily repair the damage, Tr 4 pgs 93-100.

Then the trial judge ordered the D.A. to get together with the detectives and produce those three photos- court in recess. They claimed they could not produce them.   Objections, an exception taken and later a motion for mistrial.

Very oddly appellate counsel uttered not a peep about this on direct appeal.

Think deeply.   How often in normal detective work where they have one suspect in custody (Shaughnessy), and three others at large, do they fail to preserve the first three mugshots the surviving witness selected as the driver?   It isn't done.   Keep in mind that the two assaillants in the back seat were never identfied or caught.   Not plausible, and this Court should rule that this, standing alone, in spite of the lateness of the hour caused Blodgett to sit in prison for 40 years, and it should not have.

What is plausible is that Blodgett fled to Texas.   People around town told police he used to drive stolen cars to and from work all the time, that the last car was probably the burnt one. The police took the key ring from the burnt car's ignition, and matched one key to Blodgett's apartment and then steered Robert Moses to Blodgett, being sincere advisors to him that sometimes deception is necessary to accomplish justice.   They probably told him otherwise this monster will escape justice.

Thats believable.   Not believable is that homicide detectives would misplace three photo identifications of the driver of a car of murderers.   And Moses misidentified Blodgett's hair and teeth.

Trans vol 4 pg 67.

It was a well meaning deception by over zealous detectives that had a round peg that did not fit in their square hole, so they simply sanded down the round peg to make it fit and no one was the wiser.   They had that key ring from the burnt car's ignition. We got the right guy.   Blinded to their foregone conclusion, they steered Robert Moses and impressionable Robert Moses' fell victim to the phenomenon of 'honest but mistaken identity". In James Doyle's book he says over and again that these mistaken identifications can be made stronger over time with coaching from the police.   Well meaning perhaps, but misguided.   Justice has miscarried.

Blodgett's direct appeal lawyer ignored or played dead as a mere friend of the court by bringing a main issue that had no legal basis instead of a dead bang winner issue under <u>Brady</u>.

> "...The 14th Amendment guarantees a criminal apppellant pursuing a first appeal as of right certain minimum safeguards necessary to make that appeal adequate and effective."

<u>Evitts v Lucey 469 US 387, 392 (1985)</u>

Blodgett does not present here ineffecitve assistance of appellate counsel as a constitutional issue for relief, but does bring said ineffectiveness as basis for equitable tolling. That says Blodgett is the reason he was thrown to the dogs so to speak and made to rely upon jailhouse lawyers who cannot be faulted for being ineffective.

> "(counsel)..must play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim.."

<u>Evitts v Lucey Id at 394</u>

Blodgett pleads this Court to actually read Detective Childers' complete testimony and all of Robert Moses' testimony which will with the Court's leave be forthcoming in a supplement to the appendix.    It becomes apparent that there are more players in the small scale conspiracy, but the only players you can actually see definite proof of said collusion are Det. Childers and the surviving victim Robert Moses.    But it is a major Brady violation.

It has all the elements:

*      That the evidence in question be favorable to the accused.

*      That the state suppressed the relevant evidence, either purposefully or inadvertantly.

*      That the state's actions so described resulted in prejudice.

Brady v Maryland 373 US 83, 87 (1963)

Strickler v Greene 144 LEd 2d 286, 291(1999)

To deliberately conceal the fact that the star originally picked someone else as the driver until it was apparent that the key ring belonged to Blodgett is such an egregious violation where identity was the sole theory of defense that the conviction has to be vacated, (testimony of Childers, and Moses - Supp Appndx "A", "B").

As the United States Supreme Court has stated:

> "The suppression by the prosecution of evidence
> favorable to an accused upon request violates Due
> Process where the evidence is material either to
> guilt or punishment; irrespective of the good faith
> or bad faith of the prosecution..."

Wearry v Cain 194 LEd 2d 78, 83 (2016)

Such will-ful destruction of powerful exculpatory evidence is

Structural error as the Supreme Court has also stated:

> "...structural errors deprive a defendant of a basic protection without which a trial court cannot reliably serve its function as a vehicle for determination of guilt or innocence..."

Arizona v Fulminante 499 US 279, 310 (1991)

> "Once a Court finds a Brady violation, a new trial follows as to the prescribed remedy, not as a matter of discretion..."

United States Court of Appeals of the District of Columbia, Appellant,

v

Daaiyah Pasha, Iman Pasha, Charles F Daum, appellants; 797 F3d 1122 (2015) (District of Columbia Circuit) quoting U.S. v Oruche 484 F3d 590, 595 (D.C. Cir. 2007)

The Massachusetts claim of infallibility for having once in Blodgetts' life having had the Massachusetts Supreme Judicial Court give full plenary review should not deter this Court from acting against this 40 year old miscarriage of justice.  The SJC certainly did not uncover the Brady violation, so their claim of infallibility rings hollow.

Issue Two:

Blodgett's co-defendant, the principal in the joint venture murder of John Asinari, committed suicide a full year before Blodgett was tried for murder, and his indictment had already abated according to Massachusetts and Federal Practice.  It was improper to proceed against Blodgett as joint venturer on an abated indictment, where he could not cross examine dead Shaughnessy and counsel had no standing to object on his behalf. By convicting shaughnessy on an abated indictment, Blodgett also fell as joint venturer with no way to counsel shaughnessy.

It is true corollary that if in Massachusetts Practice and Federal Practice if the accused dies before his direct appeal can be heard the indictments against him are abated, then with Shaughnessy having died before he went to trial his indictments also abated.    This abatement of indictment is more than just a quaint custom, it has significant constitutional underpinnings. The Commonwealth was allowed to have their cake and eat it too. Blodgett's counsel tried to object on dead Shaughnessy's behalf numerous times, and he was in effect told by the Court he had no standing:

> Balliro:  I object to it.
> Mr. Gaffney:  Well he has been mentioning his name without objection.   Shaughnessy's name has been mentioned all the time, so I thought..."
> Balliro:  You mean because I didn't object?
> Mr. Gaffney:   Yes.   I thought that I would just.."
> Balliro:  I will satrt objecting all the time if thats what you want me to do.   I give you a leg and you want an arm too.
> Mr. Gaffney:  What difference does it make?
> The Court:   Don't take any more.   Let them settle it, (the jury).

Tr. Vol 4 pg 62

But the Court did not foreclose any further encroachments upon dead Shaughnessy's rights.   It repeated itself over and again throughout the trial.   It was a de facto trial of Robert Shaughnessy and Blodgett was convicted as his joint venturer. Blodgett's counsel (Balliro) was tasked with defending Shaughnessy in addition to his own client with the Court ruling he had no standing to object on Shaughnessy's behalf.   This is a legal paradox.   To understand it fully, we must first examine the

opening and closing remarks of A.D.A. Gaffney:

> "...the evidence will show driven by this defendant,
> John Blodgett, and containing three other persons,
> one of whom was Robert Shaughnessy, and Robert Shaugnessy
> was also indicted on the same charges by the Suffolk
> County Grand Jury, but his case will not be before you,
> because Robert Shaughnessy, the evidence will show, is
> deceased, but the evidence will also refer to certain
> actions which Robert Shaughness, who was seated beside
> the defendant here, John Blodgett, took in connection
> with the two victims, because it is the Commonwealth's
> contention that these two, the actions of Shaugnessy
> and Blodgett, each one was responsible for each other's
> acts; that they were engaged in a joint venture; namely
> the robbery of Moses and Asinari which resulted in a
> death.."

Tr. Vol 2

> "In other words, its our contention that whatever
> Shaughnessy did is Blodgett's responsibility, and what-
> ever Blodgett did is Shaugnessy's responsibility that
> night, and that this is a continuous matter, this matter
> continued on from the outset when they picked up Through
> and until the time John Asinari was bludgeoned to death
> on the street of (sic) Essex Street, South Boston, that
> the persons responsible for that are not only Blodgett
> and Shaughnessy, but the other persons in that car.
> This is what we call joint venture, each one being
> responsible for the acts of the other.."

Tr Vol 6 pgs 86,87

So even though Shaughnessy's indictment had abated and in fact had never been tried, A.D.A. Gaffney ran dead Shaughnessy's indictment up the flag pole when he thought it expedient. Exemplar is the standard jury venire questions posed to Blodgett's potential jurors.   Whether any juror is related to any of the parties or has an interest in the case... TR Vol 1 pgs 55-58. All the police were mentioned.   Blodgett was mentioned.   The D.A. and defense counsel were mentioned.   No mention of Shaughnessy.   Dead Shaughnessy was the completely unprotected

back door through which Blodgett was convicted as joint venturer.

In United States v Edmunson 922 F Supp 505, 505-509 (Dist Ct 10th Cir 1996) it was held that a co-defendant does have standing to object to trial in absentia of his co-defendant. Although in Edmunson it was found that he was not prejudiced by his co-defendant's absence, it was still held he had a right to object- he had standing.   In archaic English law, a relative was permitted to object and suggest error in a felony case in the absence of deceased defendant, 4J Chitty Crim Law 238 (1816), but cross reference People v Genet 59 N.Y. 80 (Sup. Ct 1874). In Crosby v United States 506 US 255, 262 (1993) the High Court held that trial in absentia is prohibited unless the defendant was present at the begining of trial when jeopardy attaches, and although at least one court refused to apply Crosby retro- actively the Crosby Court based their ruling on rule 43 and cited Hopt v Territory of Utah 110 US 574, 579 (1884), so it wasn't really a new rule the High Court was making, but a re-establishment of a very old and still sound legal axiom, United States v Parrota 553 F2d 247, 248, 249 (1st Cir 1977). Parrota was decided a month before Blodgett's trial and counsel did lodge a contemproraneous exception Tr Vol 5 pg 9.

Shaughnessy suicided awaiting trial (append 39,4) ).   If he felt guilty enough to kill himself, perhaps had he lived he would have felt guilty enough to admit to the jury he stole Blodgett's keys in Barney Grogans'.   Instead we have legal paradox to substitute for constitutional rights of counsel, and Confrontation.

The trial court issued a weak constraint upon the Commonwealth conducting a de facto trial of dead shaughnessy, Tr Vol 5 pgs 1-11.   But A.D.A. Gaffney at sidebar nullified all the attempts to have some constraints placed upon this trial against Shaughnessy without Shaughnessy having the benefit of counsel.   No one to refute any of Shaughnessy's statements and actions brought in through the testimony of Robert Moses.

> "The right to counsel guaranteed by the constitution
> contemplates the services of any attorney devoted
> soley to the interests of his client."

Penson v Ohio 488 US 75, 86,87 (1988)
Glasser v United States 315 US 60, 70 (1942)

> "(violation) right to counsel where counsel was
> required to also represent his co-defendant particularly
> where interest of his co-defendant may conflict
> with his own..."

Glasser, Id at 76

> "Moreover, it would hardly be reasonable to decree
> that a potential or an actual co-defendant cannot without
> penalty sow some of the seeds and reap some of the
> fruits of a joint defense effort without first enlisting
> the aid and accompanyment of independent counsel.."

In re Grand Jury Subpoena Duces tecum ect 406 F Supp 381, 396
(US Dist 2nd Cir 1975)

> "A former co-defendant died before the case was eventually
> brought to trial.   While it is true as the govt. argues
> that the record does not indicate whether the testimony
> of this witness would have been helpful, or even available
> to the appellants, we cannot gainsay that it would not
> have been.   Certainly the death of a witness with first
> hand knowledge of the events at issue creates a strong
> possibility of prejudice..."

United States v Macino 486 F2d 750, 754 (7th Cir 1973)

Shaughenssy committed suicide a year before Blodgett was tried.
He never went to trial.

"It is difficult to imagine how a defendant might be
more prejudiced by the testimony of a witness what a
co-defendant allegedly said when precluded from cross-
examining the declarant due to the declarant's decision
not to testify..."

United States v Veltman 6 F3d 1483, 1501 (11th Cir 1993)

So in addition to the accused not being able to participate in his appeal, the dead co-defendant also had no counsel, and no right to testify in his own behalf.    Substantial constitutional rights for the dead, and the living co-defendant.    Not just a quaint anachronism.

In recent times the Courts of Massachusetts and the Legislature weighed the constitutionality of the practice of abatement of the indictment upon death of the accused before direct appeal can be heard, (most notably the uproar over Aaron Hernandez) and in each it was found to be constitutionally sound law. so there is good cause to disturb Blodgett's very old conviction based upon these significant constitutional infractions.    ALthough counsel should have been well aware that Shaughnessy's indictments had been abated and it was established Massachusetts Practice,

Com v Latour 397 Mass 1007 (1986); Com v Harris 379 Mass 917 (1980);

Com v Eisen 368 Mass 813 (1975); no one in  any Court the petitioner has been able to locate has ever challenged the joint venturer prosecution on the predicate of an abated indictment of dead co-defendant- especially with all the un-cross examined hearsay of the deceased.    Trial and appellate counsel are not required to be clairvoyant, and to foretell a ruling will happen like the one Blodgett is pleading for, Estevez v United States 601 F Supp 2d 348, 354 (US Dist 1st Cir 2009); Hughes v United States 241 F Supp 2d 148, 157 (US Dist 1st Cir 2003); com v Broom 474 Mass 486,n. 9 (2016)

Com v D'Agostino 421 Mass 281, 284 (1995).    Since the 6th Amendment to the United States Constitution and Article 12 of the Massachusetts Declaration of Rights do not require a criminal defense attorney to be clairvoyant, Blodgett cannot be faulted as a pro se petitioner shifting for himself for failing to raise this issue sooner for it is an issue of first impression.

Indeed, in Federal Practice abatement of the indictment upon death of the accused before his appeal is heard is established, United States v Logal 106 F3d 1547, 1552 (11th Cir 1997); accord, United States v Kinsey U.S. Dist Ct M.D. Macon Div. 5:09-PO-602; M.D. Georgia February 22, 2011).

In Massachusetts there is known the "clairvoyant exception" to procedurally defaulted claims, Com v Randolph 438 Mass 290, 295 (2002); Com v Nieves 394 Mass 355, 359 (1985); Com v Rembiszewski 391 Mass 123, 126 (1984); DeJoinville v Commonwealth 381 Mass 246, 248, 251 (1980).

In sum Blodgett's prosecution as joint venturer should not have happened.    The D.A. should have proceeded only with the evidence as it existed against Blodgett, OR the Court should have done the improbable and appointed counsel for Shaughnessy. A review of all the testimony of Robert Moses reveals that Shaughnessy killed John Asinari.

Blodgett stands committed for the past 40 years on the murder of Asinari and it should cease today.

Equitable Tolling:

Blodgett is 20 years past the grace period in which to file his habeas corpus petition under the AEDPA's one year statute of limitations.    He raises two constitutional issues, and for each he has a different theory as to why equitable tolling can apply. His issue one is that of actual innocence in a verified Brady issue.    He brings it late because his direct appellate counsel used a weak issue with no legal basis (the trial court prevented alibi witness from testifying- when the court later relented to allow him to testify.    The witness fled the courthouse), and direct appeal counsel ignored inexplainably a dead bang winner issue under Brady.    Although Blodget makes no constitutional issue of ineffectiveness of appellate counsel, he does raise it for equitable tolling.

In Evitts v Lucey the High Court held that a criminal defendant must have the effective assistance of counsel on his first appeal as a matter of right, 469 US 387, 392,394 (1985).    Blodgett was thrown to the dogs by appellate counsel.    Because of counsel's omission, Blodgett had no choice, (being unable to grasp law) but to put his trust in jailhouse lawyers, (like now) who never properly pleaded this valid issue under Brady that puts real doubt in the justice of the conviction.    In Christeson v Roper 190 LEd 2d 763, 2015 US LEXIS 627 the High Court held that petitioner was entitled to remand for hearing on equitable tolling because his appointed counsel missed the deadline.    What about equitable tolling because direct appellate counsel showed no

desire or ability?    Direct appeal was Blodgett's one legit

counseled opportunity and he was cheated from it.

> "A state violates due process when it fails to preserve
> irreplacable evidence possessing exculpatory value-
> that is apparrent before its destruction."

California v Trombetta 467 US 479, 488, 489 (1984)

> "This precept holds true regardless of why the evidence
> was destroyed.."

Magraw v Roden 743 F3d 1, 7,8 (1st Cir 2014);

United States v Laurent 607 F3d 895, 900 (1st Cir 2010)

> "It makes little sense to argue that because( the defendant)
> tried to impeach (the key witness) and failed, any
> further impeachment would be useless.  It is more likely
> that the defendant may have failed to impeach the
> (key witness) because the most damning impeachment
> evidence in fact was withheld by the govt."""

United States v Service Deli, Inc. 151 F3d 938, 944 (9th Cir 1998)

> ".. in appropriate cases the principles of comity and
> finality that inform the concepts of cause and prejudice
> must yield to the imperative of correcting a fundamentally
> unjust incarceration.   This in appropriate cases that
> satisfy the 'actual innocence' test, a seving exception
> is provided to petitioners who fail to meet the 'cause
> and prejudice' requirement for raising defaulted
> challenges to a conviction.."

Murray v Carrier 477 US 478, 496 (1985);

Mobley v United States 974 F Supp 553 (4th Cir 1997)

House v Bell 547 US 518, 165 LEd 2d 1, 9 (2006);

Goldman v Winn 565 F Supp 2d 200, 224, 225 (1st Cir 2008)

So Blodgett's newly presented actual innocence evidence should

be accepted in spite of his lateness because had the jury had

those three photos the government suppressed/destroyed/made

unavailable in spite of court order, the jury would have voted

for reasonable doubt.

> "All Schlup v Delo 513 US 298, 327 (1993) requires
> is that the new evidence is reliable and that it was
> not presented at trial,"

Gomez Jaimet 350 F3d 673, 679 (7th Cir 2003)

> "...A credible showing of actual innocence provides
> a gateway through which a petitioner may pursue his claims
> on the merits notwithstanding his failure to file his
> habeas petition within the statute's otherwise applicable
> limitations period..."

McQuiggin v Perkins 133 S Ct 1924, 1931 (2013)

As for Blodgett's second constitutional issue, no-body ever has challenged the legitimacy of a joint venturer conviction on the basis of underlying constitutional rights in the Federal, and Massachusetts Practice of abatement of indictment of a co-defendant upon death.  The Massachusetts criminal practice, and Federal practice both recognize abatement of indictment if the accused dies before he can participate in direct appeal.

Massachusetts recognizes an exception to doctrine of waiver under rule 30(c)(2) for substantial issues that could not have been discovered earlier through the exercise of due diligence. AEDPA's language provides for exception to procedural default on the time limit under similar language, 28 USC section 2244(d)(1)(D).

Blodgett should not be faulted for failing to bring this what would amount to a new rule on an issue of first impression, Artuz v Bennet 531 US 4: 148 LEd 2d 213 (2000) (inmate was pro se and never received the written decision in time from the state's highest court).  Because Blodgett was diligent.  Once he was given notice by his peers of theoretical relief under this new

legal premise, he and the jailhouse lawyers ran it by various attorney's for input, (appendix 6 - 15 ).    Once the jailhouse lawyers researched the legal theorys behind herein presented he then filed in thr state trial court, Suffolk County.    There was a snag.    Even though once he filed timely notice of appeal, and was in constant contact with the trial court, (he filed an allowed motion to proceed in forma pauperis on appeal, a denied motion fro appointment of student attorney to assist him) the trial court failed to notify him that the record on appeal had been assembled which triggers the 30 tiem limit to file application to the Massachusetts Supreme Judicial Court.    Blodgett only found out about assembly of the record when he wrote asking whats taking so long- he got a memo from the clerk apologizing (append 24-28 ).    Please see Artuz v Bennet 531 US 4 (2000) where the High Court remanded for hearing on equitable tolling because the state's highest court failed to provide pro se petition written decision.

But the sticking point of this pleading is the 20 year lateness of the petition.    In addition to Blodgett's actual innocence claim in issue one, he presents a legal theory on issue two that has never been tried.

> "...one year period of limitations shall apply to
> an application....habeas corpus...the limitation period
> shall run from the latest of....the date on which the factual
> predicate of the claim or claims presented could have
> been discovered through the exercise of due diligence.."

28 USC section 2244(d)(1)(D).

See Lauren v Vaughn 2006 US Dist LEXIS 77123 (Oct 18, 2006)

No question this is the thorniest of points in Blodgett's plea.
(Please see Supp. Appndx "C")

How could you fault a pro se petition with an outstanding claim of actual innocence for failing to provide a cogent legal argument within one year on a theory that has never been tested in any court before?   Once Blodgett, who has no grasp of legal pleading, had tested the novel theory around with whomever had input, he promptly filed.

> "The newly discovered evidence AEDPA limitations period runs from the date a petitioner is on notice of the facts which would support his claim, not from the date on which the petitioner has in his possession evidence to support his claim..."

Youngblood v Greiner 1998 US Dist LEXIS 1603711 n. 4, 97 Civ. 3289, 1998 WL720681 at 4 n.4 (S.D.N.Y. Oct 13, 1998);

Flanagan v Johnson 154 F3d 196, 198,199 (5th Cir 1998)

Conclusion:

The clerk should be asked to locate the previous petition in this court if it exists and provide copies to all parties.   Hearings should be held to establish the bona fides of Blodgett's claims.

Blodgett did not plead in forma pauperis because he did not wish to attach his meagher assets and those of his wife.   His wife is all he has in the world, and to risk her being homeless on a pleading that statistically has low probability of fruits, he cannot do.   If this Court can under the Criminal Justice Act appoint counsel without a financial disclosure Blodgett urges them to do so.

Blodgett's 40 year long incarceration should come to an end, and as soon as possible.

Respectfully,

John Blodgett Pro se

APPENDIX

Pages          Items

1,2            affidavit in support of motion for new trial
3,4            Commonwealth ordered to respond to motion for new trial
5              cover letter: notice of appeal
6-15           letters to attornies asking input of proposed new
               rule of law embraced in issue two
16             motion to appoint alternate counsel
17,18          motion for extension of time to respond
19-21          letter if dis-recommendation for appoint ment of
               counsel by screening counsel David Keighley
22             motion for new trial denied
23             notice of appeal (see pg 5 appendix)
24             motion to proceed in forma paupers on appeal allowed
               May 5, 2017
25             motion for extension of time to respond
27             Inquiry to clerk as to what is taking so long to
               assemble the record on appeal
28             memo from clerk indirectly stating the record on appeal
               had already been assembled with apology: "Sorry,
               if there were (sic) a misunderstanding."
29,30          order of SJC denying leave to appeal
31-33          motion to SJC for reconsideration
34,35          letters to clerk US Dist Court asking about previous
               petition
36-41          newspaper clippings coverage of the trial
SUPPLEMENTAL APPENDIX "A"
complete testimony of Detective Russell Childers 33 pages
(using only transcript numbering)
SUPPLEMENTAL APPENDIX "B"
complete testimony of Robert D. Moses   107  PAGES
(using only transcript numbering)
SUPPLEMENTAL APPENDIX "C"
lobby conference In re: rights of dead Shaughnessy vs rights
of Blodgett      (using only transcript numbering)   14 pages