UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                        |   |                              |
|------------------------|---|------------------------------|
| JOHN J. BLODGETT,      | ) |                              |
| Petitioner,            | ) |                              |
| v.                     | ) | Civil Action No. 17-12501-LTS |
| ERIN GAFFNEY,          | ) |                              |
| Respondent.            | ) |                              |

ORDER DISMISSING PETITION (DOC. NO. 1) AND
DENYING MOTION TO APPOINT COUNSEL (DOC. NO. 27)

May 1, 2018

SOROKIN, J.

John J. Blodgett, a prisoner at Old Colony Correctional Institution in Bridgewater, Massachusetts, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Blodgett filed his federal claims almost forty years after the conviction and sentence he wishes to challenge became final, and twenty years after the one-year limitation period for filing a federal habeas petition expired. His petition is DISMISSED as untimely, and his motion to appoint counsel is DENIED.

I.     BACKGROUND

On June 27, 1977, after a jury trial in Suffolk Superior Court, Blodgett was convicted of first-degree murder, armed robbery, kidnapping, and two related assault charges. Doc. No. 1 at 2; Commonwealth v. Blodgett, 386 N.E.2d 1042, 1043 (Mass. 1979). The charges arose from the shooting, stabbing, and beating of two college students hitchhiking back to their dormitory in March 1975. Blodgett, 386 N.E.2d at 1043. One victim (miraculously) lived; the other died. Id.

The surviving victim identified Blodgett as the driver of the car, and as one of four men involved in the deadly assault. Id. The car used in the crime was found burning later that night with a set of keys in the ignition. Id. One key fit the door to Blodgett's apartment. Id.

At trial, Blodgett testified that he had stolen the car involved in the crime sometime earlier, that he had driven it to a bar in Boston on the night in question, that he had encountered his alleged co-venturer (Robert Shaughnessy) at the bar, and that he had discovered his car and his keys were missing when he left the bar that night. Id. He said he later learned the car had been involved in a crime, and so he fled. Id. Blodgett was arrested two years later in Texas. Id. Before Blodgett's arrest, Shaughnessy committed suicide in jail while awaiting trial for the same offenses. Doc. No. 10 at 5.

Blodgett received a life sentence. Doc. No. 1 at 2. He filed a timely appeal, R.P.D. at 6,[1] and the Supreme Judicial Court ("S.J.C.") affirmed his conviction and sentence on March 8, 1979, Blodgett, 386 N.E.2d at 1043. Blodgett did not seek certiorari in the United States Supreme Court. R.P.D. at 8, 71. In February 1982, Blodgett filed his first motion for a new trial in state court, and in July 1982, before the first motion was resolved, he filed a second post-conviction motion seeking "release from unlawful restraint." R.P.D. at 8. The Superior Court promptly denied both motions. R.P.D. at 8-9, 75-82. Blodgett filed a third post-conviction motion in state court in August 1985. R.P.D. at 9. That motion was denied a year later, after a hearing. R.P.D. at 10, 83-85. Blodgett's fourth post-conviction motion, filed in May 1989 and then amended after counsel was appointed, was denied in March 1990. R.P.D. at 11, 86-88.

---

[1] The Court served Blodgett's petition and ordered the respondent to gather and file certain relevant information from the state court dockets. Doc. No. 13. The respondent complied, filing Respondent's Production of Documents (cited herein as "R.P.D.") in a bound volume on file with the Clerk. See Doc. Nos. 25, 26.

It appears as though Blodgett's attempts to secure further review in the SJC of the rulings rejecting his post-conviction claims were unsuccessful. See R.P.D. at 104-05 (reflecting Single Justice cases were opened in the SJC and disposed of in 1983, 1986, and 1990). In October 1990, Blodgett sought federal habeas review in this Court, but his petition was dismissed for failure to exhaust his claims. See Memo. & Order, Blodgett v. Ponte, No. 90-cv-12520-EFH, ECF No. 5 (D. Mass. 1990 Oct. 23, 1990) (reflecting in docket text that Judge Harrington compared "the ten grounds raised" in Blodgett's federal petition with "the three grounds raised" before the SJC to conclude Blodgett had not exhausted "most of the grounds raised here").

The state court dockets reflect no further filings between 1990 and 1999, when the paper dockets were converted to an electronic docketing system. See R.P.D. at 11, 66, 71-72. According to Blodgett, he filed a "state habeas corpus petition" in 1998, but the Superior Court "denied [it] without prejudice (because it was the w[ro]ng legal instrument)." Doc. No. 10 at 9.[2] In March 2010, December 2012, and February 2013, Blodgett filed a series of motions seeking to correct the mittimus issued in his case with respect to the concurrency of term-of-years sentences imposed on certain non-homicide counts. R.P.D. at 66, 69, 89. Those motions were allowed on February 21, 2013. R.P.D. at 67, 70.

The next event reflected on the state court dockets is Blodgett's filing of another motion for a new trial on June 6, 2016. R.P.D. at 67, 70. The Superior Court denied that motion on April 13, 2017. R.P.D. at 68, 90-91. The SJC denied review on August 21, 2017, and denied reconsideration on September 8, 2017. R.P.D. at 73-74, 106-09.

---

[2] The Court need not solicit further information on the timing or disposition of this filing, which is not reflected on the state court dockets submitted by the respondent, as it would not alter the timeliness analysis that follows.

3

On December 11, 2017, Blodgett signed the presently pending federal habeas petition, which this Court received and docketed on December 18, 2017. Doc. No. 1. In his pro se petition, Blodgett raises two challenges to his conviction and sentence: 1) a claim that prosecutors in his case violated Brady v. Maryland, 373 U.S. 83 (1963), by concealing information related to the surviving victim's pretrial identification of his assailants and by suborning perjury by the victim and a detective at trial; and 2) a claim that Blodgett could not legally be convicted as a joint venturer because his co-defendant had died before being convicted in connection with the alleged joint venture. Doc. No. 1 at 7, 9.

Blodgett was granted additional time in which to submit a memorandum of law and appendix in support of his federal claims. Doc. Nos. 2, 8, 9, 11. Because it appeared likely based on an initial screening that the petition was untimely, the Court did not require the respondent to answer Blodgett's claims; rather, the Court ordered the respondent to collect and submit information from the state court dockets to facilitate a complete assessment of the petition's timeliness. Doc. No. 13. That information was submitted on April 23, 2018. Doc. No. 25. On April 25, 2018, Blodgett filed a motion seeking appointment of counsel and a memorandum opposing dismissal on timeliness grounds. Doc. Nos. 27, 28.

Having carefully reviewed all of Blodgett's submissions, as well as the state court records provided by the respondent, the Court concludes Blodgett's federal claims are hopelessly untimely, and finds no justification for the appointment of counsel.

II.  DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year period of limitation on applications for writs of habeas corpus, and provides that such period "shall run from the latest of":

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Statutory tolling of the limitation period is permitted for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." § 2244(d)(2).

Blodgett's judgment of sentence became final no later than June 6, 1979, when the ninety-day period for seeking certiorari in the United States Supreme Court on direct appeal expired. See Gonzalez v. Thaler, 565 U.S. 134, 653-54 (2012) (holding that "judgment becomes final" for AEDPA purposes "when the time for pursuing direct review in [the Supreme] Court . . . expires"). Because Blodgett's conviction became final before the enactment of AEDPA, he is entitled to a "grace period," pursuant to which the period for filing his federal claims did not begin until AEDPA's effective date of April 24, 1996. Gaskins v. Duval, 183 F.3d 8, 9 (1st Cir. 1999) (per curiam). As such, absent tolling or a statutory exception, Blodgett was required to file his federal petition on or before April 24, 1997. Id. Because Blodgett filed his petition twenty years later, it is untimely unless he qualifies for an alternative start date for his federal limitation period, see § 2244(d)(1)(B)-(D), or he establishes the limitation period was tolled.

Blodgett has not claimed that any state action impeded his ability to file a timely federal habeas petition. To the extent he asserts his appellate counsel raised the wrong claims on direct appeal, that he was "prey[ed] upon" by "jailhouse lawyers," and that the state courts "refused to

5

apply longstanding United States Supreme Court precedent," Doc. No. 28 at 1-2, 4, he has not identified the sort of state action that might reasonably have prevented him from pursuing his federal claims until now. Nor do Blodgett's challenges to the prosecutor's conduct and the application of joint venture liability rely on newly recognized constitutional rights or recently discovered factual predicates. Blodgett has not relied on any Supreme Court decisions, issued in the year before his petition was filed, in which that Court recognized any new constitutional rights.[3] Factually, his claims rely entirely on information known to him at or near the time of his trial.[4] His petition, therefore, does not trigger a start date for his federal limitation period other than AEDPA's effective date under the applicable "grace period."

Moreover, Blodgett has not argued, let alone established, that his limitation period was subject to statutory tolling. The first four state post-conviction motions he pursued were filed many years before the federal limitation period began. The fifth and sixth were filed in 1998 and 2017, after the limitation period already had expired in April 1997.[5] See Delaney v. Matesanz, 264 F.3d 7, 11 (1st Cir. 2001) (concluding the statutory tolling provision is "no help" to

---

[3] Indeed, with his second claim, Blodgett urges what he characterizes as "a new rule on an issue of first impression." Doc. No. 10 at 26; see also Doc. No. 1 at 9 (describing issue as one which "has NEVER been addressed in any court on record"). Section 2244(d)(1)(C) does not alter the applicable limitation period for petitions presenting novel legal theories which have not been "recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

[4] Blodgett appears to concede that the "factual predicate" for his first claim—that is, the evidence regarding the victim's pretrial identifications—was revealed to him long ago. See Doc. No. 10 at 1 (justifying late presentation of that claim by citing actual innocence, rather than newly discovered facts); see also id. at 8-9 (listing claims related to pretrial identification process among those raised in state court decades ago). To the extent Blodgett suggests the legal theory he urges in his second claim is a "fact" revealed to him only recently by "jailhouse lawyers," id. at 1, 26-27, he ignores the distinction between a legal theory and a "factual predicate" contemplated by §2244(d)(1)(D).

[5] According to Blodgett's description, it seems the fifth motion was not "a properly filed application" in the state court's view in any event. See Doc. No. 10 at 9.

petitioner where the relevant state filing occurred after the expiration of the one-year federal limitation period).

The only remaining avenue for saving Blodgett's untimely petition from dismissal is an appeal to this Court's equitable discretion to toll the limitation period or apply an exception to it. A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); accord Drew v. MacEachern, 620 F.3d 16, 23 (1st Cir. 2010). "[E]quitable tolling 'is the exception rather than the rule.'" Riva v. Ficco, 615 F.3d 35, 39 (1st Cir. 2010) (quoting Delaney, 264 F.3d at 14); see Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir. 2007) (noting equitable tolling is only "rare[ly]" appropriate).

The diligence standard required by the doctrine of equitable tolling is "reasonable diligence," not "maximum feasible diligence." Holland, 560 U.S. at 653 (internal citations and quotations omitted). Extraordinary circumstances, for equitable tolling purposes, require more than "'garden variety' or 'excusable neglect,'" id. at 651, but less than gross negligence coupled with "'bad faith, dishonesty, divided loyalty, mental impairment, or so forth on the lawyer's part,'" id. at 649 (quoting Holland v. Florida, 539 F.3d 1334, 1339 (11th Cir. 2008), and its "rigid" extraordinary circumstances standard). As the petitioner, Blodgett "bears the burden of establishing a basis for equitable tolling." Trapp, 479 F.3d at 59.

Blodgett has failed to identify circumstances warranting equitable tolling here, and the Court's review of the parties' submissions has uncovered none. There is nothing in the record before the Court to suggest that Blodgett was justified in waiting twenty years after the expiration of his federal limitations period—and nearly thirty years after his first attempt to seek

7

habeas relief was dismissed by another session of this Court for failure to exhaust state remedies[6]—before pursuing the claims now pending in this Court.  Blodgett explains his late filing by citing his inability to "grasp[] legal theory or precepts," and the alleged failure of his direct appeal counsel to press "dead bang winner" claims.  Doc. No. 28 at 1-2.  He asserts he "diligently pursued his rights in a sense" by "randomly latch[ing] onto whatever jailhouse lawyer was in his vicinity over the years" and by "shopp[ing] around asking advice from multiple jailhouse lawyers [and] multiple attorn[eys]" before pursuing his claims in his most recent state-court motion.  Id. at 2, 4.  These are neither reasonable nor legally significant excuses for the extreme tardiness of his petition.  Cf. Trapp, 479 F.3d at 60 ("In applying the equitable tolling doctrine, an important factor is the reason for the late filing.").  Under these circumstances, Blodgett has not satisfied his burden of demonstrating that he was reasonably diligent or that extraordinary circumstances warrant invocation of the doctrine of equitable tolling.

Finally, Blodgett argues he should be excused from the admittedly expired limitation period on the basis of "newly presented actual innocence evidence," Doc. No. 10 at 25, claiming he "has served 40 years for a murder he did not commit," Doc. No. 28 at 3-4.  The Supreme Court has recognized that "actual innocence, if proved, serves as a gateway through which a petitioner may" overcome an expired federal statute of limitations.  McQuiggin v. Perkins, 569 U.S. 383, 386 (2013).  It has cautioned, however, "that tenable actual-innocence gateway pleas are rare," id., admonishing that "[t]he gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial

---

[6] Judging from the timeline as Blodgett himself describes it, he waited about eight years after his first federal petition was dismissed for failure to exhaust in 1990 before returning to state court in 1998 and endeavoring to exhaust his claims there.  See Doc. No. 10 at 9.  This is not even remotely diligent, let alone reasonably so.

8

unless the court is also satisfied that the trial was free of nonharmless constitutional error." Id. at 401 (quotation marks omitted). Blodgett has presented no such evidence.[7]

As such, the time-limiting provisions of AEDPA require that Blodgett's petition be dismissed with prejudice.

III. CONCLUSION

For the foregoing reasons, Blodgett's federal habeas petition (Doc. No. 1) is DISMISSED with prejudice, and his motion to appoint counsel (Doc. No. 27) is DENIED.[8]

SO ORDERED.

    /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[7] Blodgett has offered no "newly discovered" evidence of innocence; in fact, he has offered no evidence of innocence at all. His self-serving assertions and characterizations with respect to the surviving victim's identification testimony are not evidence and, in any event, do not raise a colorable claim of actual innocence in the face of the totality of the trial evidence as described by the SJC in its direct appeal decision and reflected in the trial transcripts and other exhibits Blodgett submitted in support of his petition. See Doc. No. 10-1 at 42-181 (containing transcripts of testimony by the victim and the detective involved in the relevant identification procedures). His legal challenge to joint venture liability where one co-venturer dies without being convicted does not ground an actual innocence claim (and, in this Court's view, borders on the absurd for reasons articulated by a lawyer assigned by CPCS to review Blodgett's proposed claims in 2015, id. at 18-19).

[8] Because "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), and based on the circumstances described above, no certificate of appealability shall issue. The considerable untimeliness of Blodgett's petition (which is not excused by any of the assertions Blodgett has made to explain the decades of delay), permits no disposition besides dismissal, and appointment of counsel would do nothing to avoid this inevitable result.

9